# EXHIBIT A

**HAROLD M. HOFFMAN, ESQ.**
NJ ATTORNEY ID NO.: 006531984
240 GRAND AVENUE
ENGLEWOOD, NJ 07631
(201) 410 - 8223
HOFFMAN.ESQ@VERIZON.NET
*ATTORNEY FOR PLAINTIFF AND THE PUTATIVE CLASS*

|  |  |
|---|---|
| **HAROLD M. HOFFMAN**, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>**THE NEW YORK TIMES COMPANY,**<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY - LAW DIVISION<br><br>DOCKET NO.: **BER-L-_____-25**<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND IN PUTATIVE CLASS ACTION** |

## OVERVIEW

1. A newspaper whose world-renowned motto is *ALL THE NEWS THAT'S FIT TO PRINT* commits itself to provide its readers and subscribers with honest and truthful news reporting, with a rigid standard of accuracy. Yet, that which is neither truthful, accurate, nor fit to print, is Defendant's July 25, 2025 front page, upper fold, right side, lead column photograph of a painfully skinny, bony child in Gaza, deceitfully described by Defendant, in the photo caption, as having been "born healthy," without disclosure of the rather relevant fact that the child suffered from cerebral palsy, hypoxemia, and that he was born with serious genetic disorders. All this,

1

so that Defendant could deceitfully use its front-page falsely to suggest to its readers, its subscribers, and to the world, that Israel and its armed forces were on a mission to starve children in Gaza.

2.      The photograph described above (hereinafter "photo"), became a worldwide flashpoint for anti-Israel sentiment and allegations that it was inflicting starvation in Gaza. News outlets throughout the world picked up Defendant's photo and reported – based upon Defendant's faulty, misleading and fraudulent reporting – that Israel was starving children in Gaza, never mentioning the fact that the child in Defendant's photo suffered from various congenital disorders that inflicted malnutrition. Indeed, the child's mother, depicted in the photo, was patently well-fed, as was the child's brother who was deliberately omitted (blacked-out) from the photo published by Defendant so that it could create and run with the misleading, erroneous, and libelous narrative that Israel was responsible for starving children in Gaza.

3.      Defendant's reporting in its July 25, 2025 edition, by way of its front-page photo, was deliberately false and misleading, and violative of the New Jersey *Consumer Fraud Act*, codified at N.J.S.A. 56:8-2, *et seq.*

4.      By the instant complaint, Plaintiff brings claims on his own behalf and on behalf of those similarly situated (the "Class"), to redress loss and injury deliberately and knowingly inflicted by Defendant – owner and publisher of the *New York Times* (the

2

"Times") – on the New Jersey consumer public through the publication, distribution, and placement on the lead column, front page of the Times dated July 25, 2025, of a heartrending, deliberately deceptive photo and accompanying story of a child in Gaza, whom Defendant falsely reported had been subjected to starvation by the State of Israel and its armed forces.

5.      This suit is brought on a *Pro Bono* basis. Should the Court find it proper and appropriate to award fees to counsel for Plaintiff, said fees, **in their entirety**, will be turned over to charitable organizations that support families that were tragically impacted by the Hamas attack of October 7, 2023.

6.      As we intend to demonstrate, Defendant knew full well that the child depicted in the photograph – held in the arms of his well fed mother and depicted in front of his well fed, older brother; a brother deliberately blacked out of the photograph so as to evade legitimate doubt as to the cause of the younger child's frighteningly skinny body – was suffering not from starvation caused and/or induced by Israel and/or its armed forces, but rather by a highly serious neurological disorder effecting the child since birth, among other serious medical conditions.

7.      Defendant knew full well that the sham story that it was promoting concerning the pitiful child depicted in the photo and prominently displayed in the lead column of its July 25th edition would be carried by newspapers and news media and

news outlets throughout the world. Defendant knew full well that its fake story would induce worldwide public outcry, protest and animosity. Nonetheless, Defendant ran, on the Times front page, with its deliberately calculated false version of the "truth," to further its political goal of smearing Israel and its armed forces.

8.      Plaintiff, a subscriber to the Times, pays substantial sums to Defendant so that he may be provided, on a daily basis, with truthful and accurate news; not fraudulent propaganda. Indeed, Defendant expressly promises that its paid subscribers, including Plaintiff, will receive "news that's fit to print," not politically motivated lies.

9.      Yet, here, Defendant recklessly, knowingly and deliberately violated its contractual mission and faithful promise, dearly paid for by its subscribers, responsibly to deliver truthful and accurate news.

10.      By this action, Plaintiff seeks legal relief to remediate the injury that Defendant has inflicted on its New Jersey subscribers.

11.      Defendant's deliberate and knowing lie concerning the underlying cause of the pathetic, skin and bones body of the child depicted in the photo of Defendant's July 25, 2025 edition was concocted and knowingly employed by Defendant falsely to suggest to Defendant's readers throughout the world, including its New Jersey subscribers, that the Child's sickening condition had been induced by "malnutrition" brought about by Israel's presence in Gaza.

4

12.     The photo was intended to tug at the heartstrings of any reader of the Times, and was the centerpiece of a lengthy article about how policies of the Israeli government and its armed forces were causing widespread starvation and malnutrition among children in Gaza. What was not emphasized in the article was the fact that Hamas – the controlling entity in Gaza – was stealing the food distribution that was being brought into Gaza by the very Israeli government and armed forces being accused by the Times of starving children in Gaza.

13.     The Times identified the child in the photo as Mohammed Zakaria al-Mutawaq, age 18 months.  Mohammed, in the photo, was held in the arms of his mother, Hedaya al-Mutawaq, and the article noted that Mohammed was "diagnosed with severe malnutrition by the Friends of the Patient Clinic and Al-Raatisi Children's Hospital," never once suggesting or disclosing that Mohammed suffered from cerebral palsy, among other highly serious medical disorders that impacted his nutrition and that Israeli policy or practice had nothing to do with Mohammed's appearance and/or suffering. In fact, the Times deliberately omitted from its photo and reportage the child standing right next to Hedaya, namely her other slightly older son who did not suffer from the same disorders as Mohammed and thus looked like a normal, properly nourished child.

14.     This deliberate effort to mislead its readers and subscribers into concluding that Israel was responsible for Mohammed's suffering is deceptive conduct in violation of

New Jersey's Consumer Fraud Statute.

15.     Of course, the New York Times is entitled to editorial freedom to choose what news to emphasize, or even to publish articles that demonize Israel on a daily basis while ignoring the effect that the U.S.-designated terror group Hamas has within Gaza. The Times has done so for many years and, in fact, seems to take a perverse pride in how often it vilifies Israel to the exclusion of actual terrorists. However, deliberate falsehoods and misleading and manipulated photos are neither "news" nor editorialization. Even those readers that subscribe to the Times for its anti-Israel leanings are entitled to truthful coverage and reporting of the Israel-Gaza conflict, as opposed to fabrications that demonstrate that subscribers are not receiving the honest reporting that they pay for.

16.     Nor can Defendant claim innocence predicated on ignorance as to the true cause of the Child's pathetically bony body depicted in the photo. The illustrious New York Times certainly had access to medical experts who would have readily pointed out that the child in the photograph was suffering from a medical disorder of significant magnitude; not a lack of food.

17.     But a medical expert was not necessary to point out to Defendant that the mother of the Child depicted in the front page photograph, as well as the brother of the Child – conveniently blacked out of the ultimately published front page photograph – both appear to be perfectly healthy, normal and well nourished. The Times certainly knew full

6

well that no mother would allow herself to be well nourished while her 18-month old child starved.

18.     Defendant managed and controlled the scheme whereby the Child in its front page photograph was falsely represented to be starving as a result of Israel's military efforts in Gaza.

19.     Defendant was well aware that its fraudulent depiction of a Child purportedly being starved by Israel would create world-wide outrage. That was Defendant's political intention. That's what it wanted. This, despite its promise to New Jersey paid subscribers that it would provide honest, accurate news.

20.     Defendant exercised total and complete operational control and decision-making power, concerning its fake story and photo. There were no accidents, or errors. Defendant knew exactly what it was doing and its decision to defraud its New Jersey paid subscribers was deliberate. Indeed, Defendant personally managed and controlled the fabrication of the above-described fraudulent story.

21.     Defendant's conscious and deliberately false "news" story deceived and cheated its New Jersey subscribers by providing fraudulent propaganda as opposed to truthful news.

22.     Nor can the Times hide behind some notion that it merely made a mistake in publishing Mohammed's photo in the context of allegations of starvation and malnutrition

caused by Israel. The Times knew or should have known at the time it published the photo that Mohammed was suffering from a highly serious disease because of how his mother and brother looked – facts that were conveniently omitted from the photo and the article. Even assuming the Times only "learned" the truth about Mohammed's condition at a later date, it continued to mislead and deceive its readers and subscribers by not correcting the truth about Mohammed's condition or issuing a retraction. Instead, it simply updated the article several days later on a little read site, not its primary web site, with an "Editor's Note" that Mohammed was "a child suffering from malnutrition." Even then, the Defendant chose to conceal the Child's serious neurological and other serious medical disorders.

23.     Defendant's  conduct constitutes fraud in the inducement to purchase/continue a New York Times subscription by resort to wholly false, sensational and misrepresented material facts.

24.     Defendant's claims and promises with respect to its purportedly honest and truthful news delivery were calculated and designed falsely to lead members of the class to believe that payment of a newspaper subscription fee would result in the delivery of truthful, honest news; not fraudulent propaganda.

25.     Defendant's claims and promises as aforesaid, constitute material misstatements of fact under the New Jersey *Consumer Fraud Act.* Defendant's conduct and

8

practice stands "outside the norm of reasonable business practice." Indeed, the lack of full disclosure and honesty constitutes an unconscionable practice under the New Jersey *Consumer Fraud Act*.

26.     The putative class comprises all New Jersey subscribers to the New York Times during the six year period preceding the filing of this suit.

27.     At all times relevant, Plaintiff was an individual with a place of residence in the State of New Jersey, County of Bergen.  Plaintiff, since childhood, has been exposed to Defendant's advertising and marketing claims and promises with respect to the integrity of its news delivery. As a result, Plaintiff became a subscriber to the New York Times on a daily basis in reliance upon Defendant's advertising, marketing claims and promises.

28.     At all relevant times, Defendant was a corporation organized and existing pursuant to the laws of the State of New York, headquartered in Manhattan.

29.     Defendant advertised, marketed, distributed and sold the New York Times throughout the United States, including the State of New Jersey.

30.     At all relevant times, plaintiff was and is a consumer, with a residence in the State of New Jersey, County of Bergen.

31.     At all relevant times, Defendant constituted a "person" as defined in the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1(d).

9

32.     In concocting fake stories to achieve political ends, the New York Times, which portrays itself as an honest and truthful purveyor of news, violated the New Jersey *Consumer Fraud Act*.

33.     Based on Defendant's illicit fabrication of "news," Defendant is believed to have sold substantial editions of its newspaper to consumers in New Jersey and throughout the United States.

34.     Defendant is knowingly reporting falsity and deceit as truthful news "that's fit to print."

35.     Defendant's claims and promises of honest and faithful news delivery were calculated and designed to lead Plaintiff and members of the putative class to believe that the New York Times was worth subscribing to as an honest purveyor of news. Plaintiff and members of the putative class relied on Defendant's deceitful claims and purchased subscriptions to the New York Times based on said deceitful claims.

36.     Members of the class, including Plaintiff, were deceived by Defendant's claims and misrepresentations concerning the child in Gaza and paid a purchase price for the New York Times based on its false claims of honest news delivery.

37.     Fraud in the inducement consists of: a misrepresentation of material fact;

knowledge or belief by the defendant of its falsity; intent that the other party rely on the misrepresentation; and reasonable reliance thereon by the other party. *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). By claiming that Israel was deliberately starving children in Gaza by resort to a photograph of a child suffering from cerebral palsy and other genetic disorders, Defendant misrepresented material facts with knowledge of their falsity. Moreover, Defendant specifically intended that purchasers rely upon the aforesaid misrepresentations.

38.     Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have purchased and/or paid **any** purchase price for Defendant's newspaper but for Defendant's false claims and misrepresentations, as well as affirmative concealment of material facts.  As a result, Defendant has wrongfully taken substantial sums from innocent consumers.

39.     Plaintiff brings this suit to recover funds taken by Defendant as a consequence of its deception and fraudulent inducement of consumers to purchase and to continue paying for a newspaper subscription to the New York Times. The affirmative claims, promises and representations made by Defendant in connection with the marketing, advertisement and sale of the newspaper, as aforesaid, are false and violative of the New Jersey *Consumer Fraud Act.*

40. Members of the putative class are purchasers of the New York Times and, prior to initiating and/or continuing a subscription to said newspaper, saw, read, heard and relied upon Defendant's advertisements, that true and accurate news would be delivered – as opposed to politically motivated fabrications.

41. Members of the class, prior to purchasing the New York Times, saw, read, heard and relied Defendant's promises and representations as aforesaid, and made an out of pocket payment to Defendant in response thereto.

42. The very purpose of the New Jersey Consumer Fraud Act is to protect consumers, such as the putative class members at bar, from being victimized by false and/or illegal promises and claims which induce purchase of a product.

43. In truth and fact, Defendant, through conscious deception, misrepresented the New York Times as an honest purveyor of news as opposed to a fabricator of fake news for political purposes. Plaintiff and members of the class paid for a misrepresented product that Defendant affirmatively represented to be an honest purveyor of news. Consumers made purchasing decisions and did, in fact, make purchases from Defendant based upon and in reliance on Defendant's specific claims and representations as aforesaid.

44. The affirmative promises and representations made by Defendant in connection with its newspaper are false, illegal and misleading. The product delivered by

12

Defendant to members of the putative class was materially misrepresented.

45.     Defendant's advertisements, promises and representations concerning its newspaper are illegal, false and constitute a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, and are a false promise.

46.     Defendant's advertisements, promises and representations concerning the New York Times result in consumers who purchased it, being subjected to misrepresentation, false promise, fraud, deceit, trickery, and false and deceptive advertising fraudulently to induce newspaper subscription and purchase.

47.     Defendant made affirmative misrepresentations and engaged in concealment of material facts in connection with the sale, marketing and/or advertisement of its newspaper to induce its sale.

48.     Members of the putative class suffered ascertainable loss in the form of actual out of pocket payment and expenditure, as aforesaid, as a result of Defendant's unlawful conduct as aforesaid.  Members of the putative class paid hard earned money and received from Defendant, in exchange, a newspaper which failed to adhere to its credo and which fabricated news for political purposes.  Indeed, there was a substantial difference between the price paid by consumers, including plaintiff, for the Defendant's newspaper, and the

13

represented nature of the product.  Thus, members of the Class did not receive the "benefit of their bargain."

49.     Plaintiff and members of the class also suffered ascertainable loss when they received, for their money, a product vastly different from the one promised by Defendant. The Defendant's product failed to measure up to the consumers' reasonable expectations based on the representations made by Defendant.  Thus, purchasers of said products were injured and suffered loss.

50.     For their money, members of the class received something different from, what they reasonably expected in view of Defendant's representations. As a result, consumers suffered ascertainable loss.

51.     Defendant marketed and sold its newspaper - and consumers purchased it - on the premise that it was an honest purveyor of news. Thus, there is a causal relationship between the Defendant's misrepresentations and the loss suffered by plaintiff and class members.

## CLASS ALLEGATIONS AND CLASS DEFINITION

52.     Plaintiff brings this suit as a class action individually and on behalf others similarly situated pursuant to New Jersey Court Rule 4:32.  Subject to additional

information obtained through further investigation and/or discovery, the definition of the Class may be expanded or narrowed. The proposed Class consists of all New Jersey subscribers to the New York Times who purchased such subscription during the six year period preceding the filing of this suit. This action has been brought and may properly be maintained as a class action pursuant to New Jersey Court Rule 4:32.

**Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The Class is comprised of consumers throughout the State of New Jersey.

**Commonality:** Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting only individual Class members, and include:

    a. Whether Defendant made affirmative misrepresentations in violation of the New Jersey Consumer Fraud Act;

    b. The appropriate measure of damages sustained by the Plaintiff and/or other members of the Class.

**Typicality:** Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's fabricated "news" story. Plaintiff, like other members of the Class, purchased the New York Times after exposure to the same misrepresentations and/or omissions in Defendant's advertising and purchased a product vastly different from the promised product. Plaintiff is advancing claims and legal theories typical to the Class.

15

**Adequacy:** Plaintiff's claims are made in a representative capacity on behalf of all members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

53.     Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action. Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class. Plaintiff is also an experienced attorney who has been previously appointed class counsel for certified classes of consumers by both state (NJ and NY) and federal courts. Thus, Plaintiff is a qualified and suitable attorney to serve as class counsel.

54.     This suit may be maintained as a class action because Defendant has acted, and/or have refused to act, on grounds generally applicable to the Class, thereby making final relief appropriate.

55.     Plaintiff also seeks injunctive relief requiring Defendant to provide written notice to the New Jersey consumer public, ON THE FRONT PAGE OF ITS NEWSPAPER, LEAD COLUMN, that its July 25, 2025 claims that the Child depicted in the front page photo was being starved by Israel were false.

56.     **Superiority**: In addition, this suit may be maintained as a class action because a class action is superior to all other available methods for the fair and efficient adjudication

16

of this controversy, since joinder of all members is impracticable. The claims asserted herein are applicable to all New York Times' subscribers. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually effectively and cost-efficiently to redress Defendant's wrongful conduct.  Individual litigation would enhance delay and expense to all parties.  The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

### [Consumer Fraud Act]

57.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

58.     Defendant's conduct constitutes an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act, *N.J.S.A*. 56:8-2.

59.     As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

   **WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment

against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT II

### [Consumer Fraud Act]

60.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

61.     Defendant's conduct constitutes deception in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

62.     As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT III

### [Consumer Fraud Act]

63.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

18

64.    Defendant's conduct constitutes fraud in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

65.    As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT IV

### [Consumer Fraud Act]

66.    Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

67.    Defendant's conduct constitutes false pretense, false promise and/or misrepresentation, in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

68.    As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and

post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT V

### [Consumer Fraud Act]

69. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

70. Defendant's conduct constitutes knowing concealment, suppression and/or omission of material facts with the intent that others, including members of the plaintiff-class, rely upon such concealment, suppression and/or omission, in connection with the sale or advertisement of any merchandise in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

71. As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT VI
### [Common Law Fraud]

72. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

20

73.     Defendant made false statements of material fact which it knew to be false at the time they were made. The false statements made by Defendant were made in writing and in a photograph. Defendant knew these statements to be false. Defendant knew that the Child depicted in the photograph was not suffering from lack of food.

74.     Defendant made the aforesaid materially false statements for the purpose of inducing consumers to act in reliance thereon. Innocent consumers acted in reasonable reliance on the accuracy of Defendant's misrepresentations that Israel was starving children in Gaza.

75.     Indeed, Defendant fully intended falsely to represent that Israel was starving children. As a result, Defendant induced and achieved consumer purchases via deceit.

76.     Plaintiff and the putative class of consumers reasonably relied on Defendant's lies and deceit.  There was absolutely no reason to doubt claims made by the purveyor of the news fit to print.

77.     Defendant's false narrative and news reporting and its false representations as to the true medical condition of the child depicted in the front page photograph of July 25, as well as its conscious, deliberate failure to disclose that the child was suffering from a neurological disorder, among other serious medical conditions, constitute material misrepresentations and concealment of a material facts.

78.     Defendant knew full well that Israel was not starving children, but that

21

fact was misaligned with Defendant's political agenda. Thus, Defendant's July 25 front page story concerning the Child in Gaza was a conscious lie.

79.     Defendant, to achieve its political goal, fully intended falsely to represent the Child's medical condition.

80.     Defendant fully intended that subscribers rely on the deliberate falsity and material incompleteness of its July 25 front page story.

81.     Plaintiff and the putative class of subscribers reasonably relied on Defendant's lies and deceit as to the nature of the Child's medical condition.

82.     Plaintiff and the putative class of consumers were damaged by paying for New York Times' subscriptions which were sold based on lies, deceit and material concealment.

**WHEREFORE**, plaintiff, individually and on behalf of the class, demands judgment against the Defendant for such damages as are permitted by law, including but not limited to punitive damages, together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, and such other and further relief, including but not limited to injunctive relief, as the Court deems just and proper.

## JURY DEMAND

Demand is hereby made for trial by jury as to all issues.

## TRIAL COUNSEL DESIGNATION

Pursuant to Rule 4:25-4, the Court is respectfully advised that Harold M. Hoffman, Esq., is hereby designated as trial counsel in behalf of plaintiff.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Harold M. Hoffman, counsel for plaintiff, hereby certifies that the matter in controversy is not the subject of any other known pending action in this or any other Court or any pending arbitration, nor is any other action or arbitration known to be contemplated. At this time, no other known party, other than members of the class, are anticipated for joinder.

I certify that the foregoing is true to the best of my knowledge.  I am aware that if any of the foregoing is wilfully false, I am subject to punishment.

**HAROLD M. HOFFMAN, ESQ.**

Dated: August 27, 2025

23

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-005816-25

**Case Caption:** HOFFMAN HAROLD  VS THE NEW YORK TIMES C OMPANY

**Case Initiation Date:** 08/27/2025

**Attorney Name:** HAROLD M HOFFMAN

**Firm Name:** HAROLD M. HOFFMAN

**Address:** 240 GRAND AVE
ENGLEWOOD NJ 076314352

**Phone:** 2014108223

**Name of Party:** PLAINTIFF : Hoffman, Harold, M

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Harold M Hoffman? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   newspaper subscriber

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
          **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
          **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/27/2025
Dated

/s/ HAROLD M HOFFMAN
Signed