## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **HAROLD M. HOFFMAN,** individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**THE NEW YORK TIMES COMPANY,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:25-cv-16103<br><br><br>Removed From:<br>Superior Court of New Jersey<br>Bergen County – Law Division<br><br>State Court Docket No.:<br>BER-L-005816-25<br><br>Motion Day:  November 17, 2025<br><br>ORAL ARGUMENT<br>REQUESTED |

### DEFENDANT THE NEW YORK TIMES COMPANY'S
### MOTION TO DISMISS AND FOR ATTORNEYS' FEES, EXPENSES, AND
### COSTS PURSUANT TO FEDERAL RULE 12(B)(6) AND NEW JERSEY'S
### <u>UNIFORM PUBLIC EXPRESSION PROTECTION ACT</u>

David L. Cook
Laura E. Sedlak
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Phone: (973) 643-7000
Facsimile: (973) 643-6500
E-mail: dcook@sillscummis.com
E-mail: lsedlak@sillscummis.com
*Attorneys for Defendant The New York Times Company*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND ..............................................................................2

ARGUMENT .....................................................................................................6

I.     LEGAL STANDARD ..............................................................................6

II.    THE CLAIMS ARE BARRED BY THE FIRST AMENDMENT................8

III.   PLAINTIFF FAILS TO PLEAD VIABLE FRAUD CLAIMS ....................14

      A.    Plaintiff Fails to Adequately Allege a New Jersey Consumer Fraud Act Violation............................................................................14

            1.    Plaintiff Has Not Alleged Unlawful Conduct in Connection with a Sale or Advertisement of Merchandise ......14

            2.    Plaintiff Fails to Plead an Ascertainable Loss ..........................18

            3.    Plaintiff Fails to Adequately Plead Causation ..........................20

      B.    Plaintiff Fails to Adequately Allege Common Law Fraud .................21

IV.   DEFENDANT IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES, COSTS, AND EXPENSES ..............................................................22

CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
    296 F.3d 164 (3d Cir. 2002) .................................................................7, 15, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................6, 7, 20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .......................................................................2, 7

*Connick v. Myers*,
    461 U.S. 138 (1983)........................................................................................8

*Daloisio v. Liberty Mut. Fire Ins. Co.*,
    754 F. Supp. 2d 707 (D.N.J. 2010).................................................................14

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985)........................................................................................8

*Dzielak v. Whirlpool Corp.*,
    26 F. Supp. 3d 304 (D.N.J. 2014)...................................................................18

*Edward J. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Const. Trades Council*,
    485 U.S. 568 (1988)........................................................................................16

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)..........................................................................................23

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013).........................................................................10

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ...........................................................................7

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)...........................................................................................8

*Gennari v. Weichert Co. Realtors*,
    691 A.2d 350 (N.J. 1997) ...........................................................................14, 16

*Green Star Energy Solutions, LLC v. Newark Warehouse Urban
    Renewal, LLC*,
    2023 WL 2424190 (D.N.J. Mar. 8, 2023) ........................................................21

*Hoffman v. Cogent Solutions Grp., LLC*,
    2013 U.S. Dist. LEXIS 176056 (D.N.J. Dec. 16, 2013)....................................21

*Hoffman v. Nissan-Infiniti LT*,
    2020 U.S. Dist. LEXIS 95583 (D.N.J. June 1, 2020).........................................19

*Hoffman v. Nordic Naturals, Inc.*,
    837 F.3d 272 (3d Cir. 2016) ........................................................................1, 16

*Hollander v. CBS News, Inc.*,
    2017 U.S. Dist. LEXIS 71445 (S.D.N.Y. May 10, 2017) ........................9, 10, 11

*Illiano v. Wayne Bd. of Educ.*,
    2024 U.S. Dist. LEXIS 28389 (D.N.J. Feb. 20, 2024) ......................................10

*Lee v. First Union Nat'l Bank*,
    199 N.J. 251 (2009) ........................................................................................16

*Lee v. TMZ Prods.*,
    2015 U.S. Dist. LEXIS 104387 (D.N.J. Aug. 10, 2015) ......................................2

*LS-NJ Port Imperial LLC v. A.O. Smith Water Prods. Co.*,
    2022 WL 17547269 (D.N.J. Dec. 8, 2022).....................................14, 15, 17, 18

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*,
    538 U.S. 600 (2003)..................................................................................11, 13

*Morse v. Lower Merion School Dist.*,
    132 F.3d 902 (3d Cir. 1997) ...........................................................................7

*N.J. Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of
    N.J.*,
    760 F.3d 297 (3d Cir. 2014) ..........................................................................6, 7

ii

*Page v. Oath Inc.*,
   2018 U.S. Dist. LEXIS 49627 (S.D.N.Y. Mar. 26, 2018) .................................... 11

*Paucek v. Shaulis*,
   349 F.R.D. 498 (D.N.J. 2025) ................................................................... 22, 23

*Peruto v. TimberTech Ltd.*,
   126 F. Supp. 3d 447 (D.N.J. 2015) ...................................................................... 19

*Ponzio v. Mercedes-Benz USA, LLC*,
   447 F. Supp. 3d 194 (D.N.J. 2020) ...................................................................... 19

*Rains v. Jaguar Land Rover N. Am. LLC*,
   2023 WL 6234411 (D.N.J. Sept. 26, 2023) ......................................................... 18

*Ramsey v. Fox News Network, L.L.C.*,
   351 F. Supp. 2d 1145 (D. Colo. 2005) ................................................................ 13

*Satz v. Starr*,
   338 A.3d 925 (N.J. Super. Ct. App. Div. 2025) ................................................. 23

*Silver v. Pep Boys-Manny, Moe & Jack of Del., Inc.*,
   2018 WL 1535285 (D.N.J. Mar. 29, 2018) ......................................................... 16

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ............................................................................................ 8

*The New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................... 8, 10, 22

*Thiedemann v. Mercedes-Benz USA, LLC*,
   872 A.2d 783 (N.J. 2005) ................................................................................... 18

*Unimed Int'l, Inc. v. Fox News Network, LLC*,
   2023 U.S. Dist. LEXIS 226999 (D.N.J. Dec. 19, 2023) ..................................... 14

*United States v. Alvarez*,
   567 U.S. 709 (2012) ....................................................................................... 9, 13

*Vagias v. Woodmont Props., LLC*,
   894 A.2d 68 (N.J. Super. Ct. App. Div. 2006) .......................................... 14, 15, 17

iii

*Wash. League for Increased Transparency & Ethics v. Fox News*,
  2021 Wash. App. LEXIS 2213 (Wash. Ct. App. Aug. 30, 2021) ........................9

**Statutes**

N.J.S.A. § 2A:53A-49 to -61 ....................................................................*passim*

N.J.S.A. § 56:8-2.......................................................................................*passim*

Fed. R. Civ. P. 9 .......................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)............................................................................*passim*

**Other Authorities**

Clyde Haberman, *150th Anniversary: 1851-2001; Banner Headlines
  and Comic Strips*, N.Y. Times (Nov. 14, 2001) .................................................12

First Amendment to the New Jersey Constitution.................................................22

First Amendment to the United States Constitution .........................................*passim*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the New Jersey Uniform Public Expression Protection Act, N.J.S.A. § 2A:53A-50, *et seq.* ("UPEPA"), Defendant The New York Times Company ("The Times"), publisher of *The New York Times*, moves to dismiss the Complaint and to recover its attorneys' fees, expenses, and costs.

## **PRELIMINARY STATEMENT**

This lawsuit is an unfounded attack on constitutionally protected journalism masquerading as a consumer protection action. Plaintiff Harold Hoffman believes The Times got its facts wrong in a July 2025 article about widespread famine in Gaza during the Israel-Hamas war. Mr. Hoffman does not claim the article defamed him or portrayed him in a false light, nor could he: the article does not refer to him at all. Mr. Hoffman has instead devised a novel legal theory: the article was a deliberate deception that sought to smear the state of Israel, thereby defrauding him and other subscribers of The Times in New Jersey. He brings claims largely under the New Jersey Consumer Fraud Act (NJCFA), as he has against other defendants many times before. *See, e.g.*, *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 274–75 (3d Cir. 2016) (noting that Hoffman "is a serial *pro se* class action litigant" and "has sued nearly 100 defendants in New Jersey state court in a period of less than four years").

Mr. Hoffman's claims are meritless and warrant dismissal with prejudice. His lawsuit is entirely foreclosed by the First Amendment, since it seeks to impose liability on The Times for constitutionally protected speech. The Complaint also fails to adequately allege the elements of a NJCFA or common law fraud claim. And because Mr. Hoffman's claims fall squarely within UPEPA, The Times is entitled to recover its attorneys' fees, costs, and other litigation expenses upon dismissal.

## **FACTUAL BACKGROUND**

### 1. The Times's Article

On July 25, 2025, The Times[1] published in print a news story (the "Article") about the deepening famine in Gaza amid the ongoing war between Israel and Hamas. *See* Declaration of David L. Cook ("Cook Decl."), Ex. A.[2] The Article reported that after 21 months of war, "the lack of available food and water is taking

---

[1] The Times publishes *The New York Times* newspaper and nytimes.com. This brief refers to both the paper and the company as The Times throughout.

[2] The Times submits with this motion (i) the print version of the Article, as published on July 25, 2025, in The Times's New York edition (Cook Decl. Ex. A); (ii) the online version of the Article, as published on July 24, 2025, and updated on July 29, 2025 (Cook Decl. Ex. B), and (iii) the print and online versions of the editors' note published by The Times on July 30, 2025 (Cook Decl. Exs. C, D). Because all of these materials are "integral to" and "explicitly relied upon in the complaint," the Court may consider them on this motion to dismiss. *See, e.g.*, *Lee v. TMZ Prods.*, 2015 U.S. Dist. LEXIS 104387, at *7–8 (D.N.J. Aug. 10, 2015) ("[I]t would be unjust for Lee to rely on the Korean-language article in her complaint and then prevent KTNY from explaining the article's contents in a Rule 12(b)(6) motion to dismiss.") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

a heavy toll on Gaza's most vulnerable civilians — the young, the old and the sick." *Id.* Among those civilians was Mohammed Zakaria al-Mutawaq, who at the time of the Article was 18 months old. *Id.* He appeared in a photograph (the "Photo") alongside the Article on The Times's front page, emaciated and cradled in his mother's arms. *Id.* A caption underneath the Photo read:

> Mohammed Zakaria al-Mutawaq, about 18 months, with his mother, Hedaya al-Mutawaq, who said he was born healthy but was recently diagnosed with severe malnutrition. A doctor said the number of children dying of malnutrition in Gaza had risen sharply.

*Id.* The body of the Article also said, citing the mother, that Mohammed was "born a healthy child" and was later "diagnosed with severe malnutrition" by a clinic and hospital in Gaza. *Id.*

On July 29, 2025, The Times published an updated version of the Article (the "Updated Article") containing additional information about Mohammed. Cook Decl. Ex. B. The Updated Article omitted the mother's statements about Mohammed's health at the time of his birth and instead cited Mohammed's doctor, who said the boy "had pre-existing health problems affecting his brain and muscle development." *Id.* The Updated Article went on: "But his health deteriorated rapidly in recent months as it became increasingly difficult to find food and medical care, and the medical clinic that treated him said he suffers from severe malnutrition." *Id.*

Notably, there is no factual inconsistency between the Article and Updated Article. Mohammed's doctor did not say the boy was unhealthy at birth, only that he

3

had "pre-existing health problems." Cook Decl. Ex. B. And the salient fact — that Mohammed suffered from "severe malnutrition" — appeared in both versions of the story. Cook Decl. Exs. A, B.

Still, The Times explained the changes to readers by publishing on its website and in print an editors' note regarding the Article (the "Editors' Note") the next day:

> An article on Friday about people in Gaza suffering from malnutrition and starvation after nearly two years of war with Israel lacked information about Mohammed Zakaria al-Mutawaq, a child suffering from severe malnutrition and whose photo was featured prominently in the article. After publication of the article, The Times learned from his doctor that Mohammed also had pre-existing health problems. Had The Times known the information before publication, it would have been included in the article and the picture caption.

Cook Decl. Exs. C, D.[3]

The Complaint alleges, incorrectly, that The Times tried to bury the Editors' Note on a "little read site, not its primary website." Dkt. 1 Ex. A ("Compl.") ¶ 22. In fact, the Editors' Note appears on The Times's main website alongside corrections on July 30, 2025. Cook Decl. Ex. D. The top of the Updated Article indicates that the piece was updated on July 29, 2025, and an abbreviated version of the Editors' Note appears at the bottom of the piece. Cook Decl. Ex. B.

---

[3] The online version of the Editors' Note included a hyperlink to the Updated Article. Cook Decl. Ex. D.

4

2.  This Action

On August 28, 2025, Mr. Hoffman brought this putative class action against The Times in New Jersey Superior Court. *See* Compl. The Complaint asserts six causes of action: five under the NJCFA and a sixth for common law fraud. *See id.* It alleges that The Times's Article was not merely inaccurate, but a calculated deception intended to defraud Mr. Hoffman and other New Jersey subscribers. *See id.* ¶¶ 1-3. In particular, the Complaint claims it was "fraudulent" for The Times to state in the caption of the Photo that Mohammed was "born healthy" and also to "deliberately omit[]" Mohammed's brother (who was allegedly "patently well-fed") from the Photo. *Id.* ¶¶ 1-2. According to the Complaint, The Times committed an additional fraud because it claims in its motto to publish "All the News That's Fit to Print" — a motto that the Complaint casts as a legally enforceable, factual representation — but then disseminated a story with "politically motivated lies." *Id.* ¶ 1. Mr. Hoffman seeks damages for himself and the putative class, *id.* ¶ 22, along with an injunction ordering The Times to print a notice about the Photo and accompanying caption, *id.* ¶ 55.

The Times timely removed the case to federal court on September 29, 2025. *See* Dkt. 1.

5

## ARGUMENT

The Complaint fails to state a claim. Mr. Hoffman's entire suit is barred by the First Amendment. Even assuming the Article was false in any respect (and The Times does not concede it was) its contents garner the strongest First Amendment protection and cannot be the basis of civil liability. For this reason alone, the Complaint should be dismissed with prejudice. But there are other, fatal infirmities in Mr. Hoffman's pleading: He fails to adequately allege several elements of his NJCFA claims and his common law fraud claim. Because Mr. Hoffman's suit targets The Times's speech on a matter of public concern, the action falls within UPEPA and The Times is entitled to recover its attorneys' fees, costs, and other litigation expenses.

## I.      LEGAL STANDARD

"To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *N.J. Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint has "facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For the purposes of the motion, the court must accept a complaint's well-pled allegations

6

as true and will draw all reasonable inferences in favor of the plaintiff. *See id.* However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington*, 114 F.3d at 1429–30). Thus, a mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition, Rule 9(b) imposes a heightened pleading standard on fraud-based claims. Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to provide defendants with notice of the "precise misconduct" that is alleged and to "protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002). A plaintiff alleging fraud must therefore state the "circumstances constituting fraud . . . with particularity." *Id.* The plaintiff may satisfy the heightened pleading standard by describing the circumstances surrounding the alleged fraud with "precise allegations of date, time, or place *or* by using some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.; see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

7

## II.    THE CLAIMS ARE BARRED BY THE FIRST AMENDMENT

The Complaint acknowledges that "[t]he New York Times is entitled to editorial freedom to choose what news to emphasize." Compl. ¶ 15. Indeed it is. But the Constitution's protections go further than that. The First Amendment broadly and robustly protects the right of The Times and others to report on matters of public concern — even where a plaintiff alleges, as Mr. Hoffman does here, that the reporting was inaccurate.

The constitutional principles relevant here are well established. The Supreme Court has said clearly that First Amendment protections are at their apex where the speech at issue bears on a "matter of public concern." *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 452–53 (2011); *see id.* at 453 (noting that this category includes speech "relating to any matter of political, social, or other concern to the community," or speech that "is a subject of legitimate news interest") (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983) (cleaned up)). Such speech is at "the heart of the First Amendment's protection" because it is "the essence of self-government." *Id.* at 451–52 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985) (Powell, J.); *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964)); *see also The New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"). The Supreme Court

8

also has rejected the idea that even false speech is categorically unprotected by the First Amendment: "some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *United States v. Alvarez*, 567 U.S. 709, 718 (2012).

It follows that a news organization may not be held liable for errors in its reporting — and certainly not when the subject is "of legitimate news interest" — merely because the statements were actually or allegedly false. *See, e.g.*, *Wash. League for Increased Transparency & Ethics v. Fox News*, 2021 Wash. App. LEXIS 2213, at *1, 6-9 (Wash. Ct. App. Aug. 30, 2021) (affirming dismissal of claim against Fox News under state's consumer protection law for "making false statements on-air about the COVID-19 pandemic" and thereby posing an alleged threat to public health).

That does not mean that speech on matters of public concern is "categorically off-limits." *Hollander v. CBS News, Inc.*, 2017 U.S. Dist. LEXIS 71445, at *9–10 (S.D.N.Y. May 10, 2017), *vacated and remanded on other grounds sub nom. Hollander v. Garrett*, 2018 U.S. App. LEXIS 2229 (2d Cir. Jan. 30, 2018).[4] An inaccuracy in a news story may defame the subject of the coverage or portray the

---

[4] In *Hollander*, the Second Circuit vacated and remanded the district court's judgment because it found that the case should have been dismissed for lack of subject matter jurisdiction, and such dismissals must be without prejudice. *Hollander*, 2018 U.S. App. LEXIS 2229, at *36.

9

subject in a false light. *See, e.g.*, *Illiano v. Wayne Bd. of Educ.*, 2024 U.S. Dist. LEXIS 28389, at *21, 23–24 (D.N.J. Feb. 20, 2024) (explaining the elements of each tort). But the Complaint does not allege such claims, nor could it. Mr. Hoffman has no standing to bring a claim on behalf of the state of Israel, whose reputation he apparently seeks to vindicate by bringing this lawsuit. *See, e.g.*, Compl. ¶ 2 (alleging The Times published the Article to advance a "libelous narrative" about Israel); *Sullivan*, 376 U.S. at 288–92 (finding that the "of and concerning" requirement of defamation law is a constitutional one, and observing that "no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence").

Instead, the Complaint takes a different tack: it casts The Times's coverage as a "fraud" perpetrated on Mr. Hoffman and other New Jersey subscribers. The Times did not locate in its research any case where such a claim has been asserted under the NJCFA. But the basic tactic is a tried, tested, and failed one. Stated simply, a plaintiff may not do through the law of consumer fraud what the First Amendment bars him from doing otherwise. *Cf., e.g.*, *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) ("A plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim.") (cleaned up).

Mr. Hoffman's claims here are not dissimilar to those rejected in *Hollander*, 2017 U.S. Dist. LEXIS 71445, though the plaintiff there chose a different vehicle

10

for his claims: the Racketeer Influenced and Corrupt Organizations Act. Mr. Hollander sued The Times and others under that law on the basis that their "false and misleading news reports" about then-candidate Trump during the 2016 presidential campaign constituted predicate acts of wire fraud. *Id.* at *2–3. Like the plaintiff here, Mr. Hollander objected to the contents of the news reports but was not mentioned in them.

The court dismissed the suit on First Amendment grounds. *Id.* at *8–12. It explained that news reporting on the 2016 election constitutes political speech that "is at the core of what the First Amendment protects," even if the reports were "inaccurate, biased, or misleading." *Id.* at *9, 11. As the court put it: "it is long settled that factual errors, actual or asserted, in speech on matters of public concern do not remove such expression from the protection of the First Amendment." *Id.* at *11; *accord, e.g.*, *Page v. Oath Inc.*, 2018 U.S. Dist. LEXIS 49627, at *4 (S.D.N.Y. Mar. 26, 2018) ("[E]ven speech containing factual errors or constituting defamatory statements is not beyond the scope of the First Amendment's protection."). And "simply labeling an action one for 'fraud,' of course, will not carry the day." *Hollander*, 2017 U.S. Dist. LEXIS 71445, at *11 (quoting *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003)) (cleaned up).

Those same principles apply here. The subject of the Article — the war in Gaza, and in particular the impact of the conflict on access to food and water in the

11

territory, *see* Cook Decl. Ex. A — is indisputably a matter of public concern. Indeed, the Complaint acknowledges as much when it alleges the Article was picked up by "[n]ews outlets throughout the world." Compl. ¶ 2. And Mr. Hoffman's basic grievance, like Mr. Hollander's, is that The Times misstated some facts (as to Mohammed's health at birth) and omitted others (as to Mohammed's brother). The allegation that The Times engaged in a calculated campaign to publish "politically motivated lies," *id.* ¶ 8 — only to update the story five days later, Cook Decl. Ex. B — is neither factually supported nor logical.

Insofar as Hoffman alleges that the Article was "fraudulent" because it contravenes The Times's motto, "All The News That's Fit To Print," Compl. ¶ 1, that theory also runs headlong into the First Amendment.[5] Exactly what this motto means is a matter of debate. *See, e.g.*, Clyde Haberman, *150th Anniversary: 1851-2001; Banner Headlines and Comic Strips*, N.Y. Times (Nov. 14, 2001), https://www.nytimes.com/2001/11/14/news/150th-anniversary-1851-2001-banner-headlines-and-comic-strips.html ("What, exactly, does it mean? You decide. The phrase has been debated, and endlessly parodied, both inside and outside The Times for more than a century."). But as discussed in greater detail below, what is clear is

---

[5] Though the Complaint also refers to other "advertising and marketing claims and promises [by The Times] with respect to the integrity of its news delivery," Compl. ¶ 27, it never identifies what these promises were or how The Times violated them.

that no reasonable subscriber would interpret the motto to be a factual representation — much less a legally enforceable guarantee — that The Times's news coverage is entirely error free. Even if the motto reflects an aspiration to publish accurate information, The Times does not become liable for "fraud" when it fails to live up to that aspiration — just as Fox News does not commit fraud when its reporting does not turn out to be "fair and balanced." *See, e.g.*, *Madigan*, 538 U.S. at 620 (noting that fraud has "[e]xacting proof requirements" in order "to provide sufficient breathing room for protected speech"); *Ramsey v. Fox News Network, L.L.C.*, 351 F. Supp. 2d 1145, 1154 (D. Colo. 2005) ("While the December 2002 broadcast appears to plaintiffs not to have been 'fair and balanced' towards them, it was not defamatory.").

To be clear, Mr. Hoffman has recourse for what he sees as misleading news reporting on the Israel-Hamas war — just not in this Court. He is free to publicly criticize The Times's coverage, as others have. *See Alvarez*, 567 U.S. at 727 ("The remedy for speech that is false is speech that is true. This is the ordinary course in a free society."). He may cancel his subscription to The Times. But what he may not do is weaponize the law of consumer fraud to silence news reporting he disagrees with or dislikes.

## III.   PLAINTIFF FAILS TO PLEAD VIABLE FRAUD CLAIMS

### A.   Plaintiff Fails to Adequately Allege a New Jersey Consumer Fraud Act Violation

The NJCFA was "enacted 'to address fraudulent practices in the market for consumer goods and to deter such conduct by merchants.'" *Unimed Int'l, Inc. v. Fox News Network, LLC*, 2023 U.S. Dist. LEXIS 226999, at *10 (D.N.J. Dec. 19, 2023) (Padin, J.). To state a claim under the NJCFA, a plaintiff must allege (1) unlawful conduct in connection with the sale or advertisement of merchandise or real estate, (2) an ascertainable loss, and (3) a causal relationship between the defendant's unlawful conduct and the ascertainable loss. N.J.S.A. § 56:8-2; *see also LS-NJ Port Imperial LLC v. A.O. Smith Water Prods. Co.*, 2022 WL 17547269, at *5 (D.N.J. Dec. 8, 2022) (Padin, J.). Rule 9(b)'s heightened pleading standard applies to NJCFA claims like Mr. Hoffman's, which sound in fraud. *See, e.g.*, *LS-NJ Port Imperial*, 2022 WL 17547269, at *5; *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010).

### 1.   Plaintiff Has Not Alleged Unlawful Conduct in Connection with a Sale or Advertisement of Merchandise

The NJCFA defines unlawful conduct to include "both affirmative acts of deception and acts of omission." *Vagias v. Woodmont Props., LLC*, 894 A.2d 68, 70 (N.J. Super. Ct. App. Div. 2006). An affirmative misrepresentation must be "material to the transaction and . . . a statement of fact, found to be false, made to induce the buyer to make the purchase." *Gennari v. Weichert Co. Realtors*, 691 A.2d

14

350, 366 (N.J. 1997). For omissions, a plaintiff has the additional burden to plead and prove "that the defendant acted with knowledge," as "intent is an essential element of the fraud." *See LS-NJ Port Imperial*, 2022 WL 17547269, at *6. Whether an affirmative deception or an omission, the "unlawful conduct" is not actionable under the NJCFA unless it has a "capacity to mislead." *Vagias,* 894 A.2d at 71; *see also LS-NJ Port Imperial*, 2022 WL 17547269, at *5. And there is one more critical requirement: the unlawful conduct must be made "in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. § 56:8-2.

The Complaint does not plausibly allege any unlawful conduct. To begin with, apart from The Times's motto (which is arguably not an advertising or marketing claim at all), the Complaint fails to allege with particularity, as required by Federal Rule 9(b), the "advertising and marketing claims and promises" on which Mr. Hoffman claims to have relied when he decided to become a subscriber. Compl. ¶ 27; *see Foodtown, Inc.*, 296 F.3d at 172 n.10.

To the extent the Complaint alleges that the Article's contents contained affirmative misrepresentations in violation of the NJCFA — and setting aside the profound constitutional problems with that argument, *see supra* Part II — that claim is a nonstarter for at least two reasons. For one, the contents of a news story are not published "in connection *with the sale or advertisement* of any merchandise or real estate." N.J.S.A. § 56:8-2 (emphasis added). Stated another way, the Article was not

an advertisement, and to construe it otherwise would (unconstitutionally) erase the distinction between commercial speech and speech on matters of public concern. *See, e.g.*, *Lee v. First Union Nat'l Bank*, 199 N.J. 251, 258 (2009) ("[Courts] must abide by the definitions that control the boundaries of the CFA's reach."); *Edward J. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).

For another thing, the Complaint does not allege that the Article materially induced *Mr. Hoffman* to purchase his subscription to The Times. *See Gennari*, 691 A.2d at 366; *Silver v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 2018 WL 1535285, at *6 (D.N.J. Mar. 29, 2018) ("Plaintiff has failed to allege that the [allegedly misleading statement] was provided to her in conjunction with her purchase of auto parts from Pep Boys' Princeton store . . . [or] that she read [it] before making her purchase."). Indeed, the Complaint's allegations suggest that he was a subscriber well before The Times published the Article. *See, e.g.*, Compl. ¶ 52 (seeking six-year class certification). And his basic grievance in the Complaint — which focuses on his support of Israel in the war in Gaza — makes plain he would be *less likely* to subscribe as a result of a picture that he sees as providing a sympathetic portrayal of Gazans.

The Complaint fares no better on the claim that The Times's motto, "All the News That's Fit to Print," is an affirmative act of deception. Compl. ¶ 1. Even

16

assuming The Times's motto could be considered a statement made "in connection with the sale or advertisement of any merchandise," and that Mr. Hoffman subscribed to The Times in reliance upon it, the motto is not a false statement of fact. As noted, the meaning of the motto is far from definite. But one fair reading of it is that The Times will exercise its own subjective editorial discretion in determining what topics to cover and how to cover them in its newspaper. What is "fit" and what is not "fit" is by its very nature not a fact, but a subjective determination made by editors. The Complaint acknowledges that The Times may properly exercise such discretion: "The New York Times is entitled to editorial freedom to choose what news to emphasize." Compl. ¶ 15. No reasonable consumer would rely on the motto as a legally enforceable guarantee of the accuracy of everything published in The Times. In other words, The Times's motto is neither an "assurance[] of fact," *LS-NJ Port Imperial*, 2022 WL 17547269, at *6, nor does it have the "capacity to mislead," *Vagias*, 894 A.2d at 71.

To the extent the Complaint separately alleges an omission claim based on the Article's contents — *i.e.*, its alleged failure to include Mohammed's complete health history and the alleged erasure of Mohammed's brother from the Photo — the claim fails for a variety of reasons. As with the purported affirmative misrepresentations in the Article, these alleged omissions were not made in connection with the sale or advertising of merchandise, nor could they have plausibly induced Mr. Hoffman to

17

purchase a subscription. In addition, the Complaint never plausibly alleges that The Times acted with intent — *i.e.*, that it deliberately omitted the information from the Article in order to deceive its readers. *See LS-NJ Port Imperial LLC*, 2022 WL 17547269, at *6.[6] These defects are fatal. And they cannot be remedied by repleading: new allegations would not change the fact that Mr. Hoffman subscribed to The Times before any of the alleged misstatements or omissions, or that news articles are not advertising.

### 2.    Plaintiff Fails to Plead an Ascertainable Loss

To viably plead an ascertainable loss under the NJCFA, a plaintiff must "specify the price paid for the product and the price of comparable products." *See Rains v. Jaguar Land Rover N. Am. LLC*, 2023 WL 6234411, at *7 (D.N.J. Sept. 26, 2023) (Padin, J.) (dismissing NJCFA claim by putative class at the motion to dismiss stage for failure to plead ascertainable loss). The amount of loss must be quantifiable or measurable; it cannot be hypothetical or speculative. *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335–36 (D.N.J. 2014); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792–93, 795 (N.J. 2005).

---

[6] The Complaint's allegation that The Times erased Mohammed's brother is particularly thin. No facts in the Complaint support the claim, nor does the Photo on its face indicate that anyone was "blacked out." *See* Compl. ¶ 2; Cook Decl. Ex. A.

For example, in *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 458–59 (D.N.J. 2015), the court dismissed a NJCFA claim on a Rule 12(b)(6) motion where the plaintiffs failed to adequately allege ascertainable loss. The court noted that a plaintiff must "specify the price paid for the product *and the price of comparable products* to adequately state a claim under the NJCFA." *Id.* (emphasis added); *see also id.* at 459 (plaintiff must allege "that the difference in value between the product promised and the one received can be reasonably quantified"). Similarly, in *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 244 (D.N.J. 2020), the court dismissed a NJCFA claim where the plaintiff failed to plead ascertainable loss because he merely alleged that the true value of the car he received was lower than the price he paid. As the court put it, the plaintiff's "allegations provide[d] no out-of-pocket expense to [him] or information to otherwise quantify his loss." *Id.*

The Complaint suffers from similar defects. It suggests that Mr. Hoffman is a long-standing subscriber to The Times. Compl. ¶¶ 8, 27. But it does not allege the date when Mr. Hoffman first subscribed, how much he paid, how much the subscription would be worth if it did contain the alleged misrepresentations or omissions, or even that the difference in value can be "reasonably quantified." Nor are these flaws ones that Mr. Hoffman could remedy by amending his Complaint. *See, e.g.*, *Hoffman v. Nissan-Infiniti LT*, 2020 U.S. Dist. LEXIS 95583, at *20 (D.N.J. June 1, 2020) (denying leave to amend as futile after Hoffman failed to plead

19

ascertainable loss). Even if pled, the loss attributable to merely one news story in one edition of The Times over the course of Mr. Hoffman's subscription period could never be anything more than speculative or hypothetical.

### 3.   Plaintiff Fails to Adequately Plead Causation

Finally, Plaintiff fails to plead that any of the alleged "unlawful conduct" — whether that is the motto or the contents of the Article — caused his ascertainable loss. To the extent the motto is the alleged unlawful conduct, Plaintiff's conclusory causation allegations fail under Rule 9(b) because he does not allege when he saw the motto or that he purchased his subscription *after* reading the motto. *See, e.g.*, *Foodtown*, 296 F.3d at 173 n.10. Nor, as noted above, does he allege that the motto is what induced him to initially purchase his subscription to The Times.

Insofar as the Article is itself the purported unlawful conduct, Mr. Hoffman again does not allege when he saw it or that it induced him to subsequently subscribe on or after the date of the publication. *See generally* Compl. Plaintiff's conclusory allegation that members of the putative class "suffered ascertainable loss . . . as a result of Defendant's unlawful conduct as aforesaid," Compl. ¶ 48, is not sufficient, because mere recitation of the elements of a claim "will not do." *Twombly*, 550 U.S. at 555.

20

**B.    Plaintiff Fails to Adequately Allege Common Law Fraud**

For similar reasons, Plaintiff fails to adequately allege a common law fraud claim. *See* Compl. ¶¶ 72-82. The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Green Star Energy Solutions, LLC v. Newark Warehouse Urban Renewal, LLC*, 2023 WL 2424190, at *4 (D.N.J. Mar. 8, 2023) (Padin, J.).

None of these elements is adequately alleged in the Complaint. The Times's motto is not a factual statement at all, and even assuming the Article contained a "misrepresentation," neither the Article nor the motto were plausibly "material" to Mr. Hoffman's decision to subscribe to The Times. The allegations that The Times knew either the Article or motto to be false — and intended subscribers like Mr. Hoffman to rely on those representations — are supported by nothing more than the Complaint's bald, self-serving assertions. The Complaint does not plausibly allege that Mr. Hoffman reasonably relied on these statements in deciding to subscribe, nor does he specify what damages he suffered. This claim too should be dismissed with prejudice. *See, e.g.*, *Hoffman v. Cogent Solutions Grp., LLC*, 2013 U.S. Dist. LEXIS 176056, at *12 (D.N.J. Dec. 16, 2013) (dismissing common law fraud claim because plaintiff "fail[ed] to identify with specificity the nature of the misrepresentations,

21

when they were made, which representations he relied on, and how he relied on them," or the resulting damages).

## IV.    DEFENDANT IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES, COSTS, AND EXPENSES

"A free marketplace of ideas tolerating 'uninhibited, robust, and wide-open' 'debate on public issues' is an empty 'national commitment' if the cost of speaking is financial ruin at the end of a long legal battle." *Paucek v. Shaulis*, 349 F.R.D. 498, 505 (D.N.J. 2025) (quoting *Sullivan*, 376 U.S. at 270). To address that concern, in 2023, New Jersey's legislature enacted an anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. The law, adopted in New Jersey as the Uniform Public Expression Protection Act ("UPEPA"), N.J.S.A. § 2A:53A-49 to -61, is meant to protect "people from meritless lawsuits intended to intimidate them for exercising their free speech rights." *Paucek*, 349 F.R.D. at 509 (quoting N.J. Governor's Message, 2023 S.B. 2802/A.B. 4393).

By its terms, UPEPA applies to civil actions based on the defendant's "exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. § 2A:53A-50(b)(3). UPEPA creates both procedural and substantive protections for defendants

22

exercising that right. As relevant here,[7] UPEPA contains a mandatory fee-shifting provision. *Id.* § 2A:53A-58(1). That is, where a defendant "successfully dismisses [a] cause of action implicating his speech on a matter of public concern, the Court must award costs, reasonable attorney's fees, and reasonable litigation expenses related to the filing of the dismissal motion." *Paucek*, 349 F.R.D. at 510 (citing N.J.S.A. § 2A:53A-58); *see also generally Satz v. Starr*, 338 A.3d 925, 930–31 (N.J. Super. Ct. App. Div. 2025) (discussing the intent of the Legislature in awarding fees, costs, and expenses). As Chief Judge Bumb explained recently, fee-shifting provisions like this one are generally considered substantive under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and therefore apply in diversity cases in federal court. *Paucek*, 349 F.R.D. at 513–17. The fee-shifting provision furthers the goals of UPEPA by "shift[ing] the economic burden imposed by lawsuits filed to silence a critic's protected speech by requiring the plaintiff to pay a prevailing defendant's legal fees and costs." *Id.* at 505.

This lawsuit falls squarely within the scope of UPEPA. The Complaint seeks to impose liability on The Times for the contents of the Article and its motto (which appears on the front page of The Times's print edition, *see* Cook Decl. Ex. A) — straightforward exercises of The Times's "right of freedom of speech [and] of the

---

[7] The Times does not invoke here UPEPA's procedural protections.

23

press." N.J.S.A. § 2A:53A-50; *see supra* Part II.[8] Nor is there doubt that the contents of the Article relate to "a matter of public concern." *See supra* Part II. Upon dismissal of the Complaint, The Times is entitled to recover its attorneys' fees, costs and litigation expenses.

## CONCLUSION

For the foregoing reasons, The Times respectfully requests that the Court dismiss this action in its entirety, with prejudice, and award The Times reasonable attorneys' fees, expenses, and costs relating to this motion.

Dated:  October 20, 2025

Respectfully submitted,

*/s/ David L. Cook*

David L. Cook
Laura E. Sedlak
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500
dcook@sillscummis.com
lsedlak@sillscummis.com
*Attorneys for Defendant*
*The New York Times Company*

---

[8] UPEPA does not apply to certain claims based on communications related to the "sale or lease of . . . goods or services." N.J.S.A. § 2A:53A-50(c)(3) ("This act does not apply to a cause of action asserted . . . against a person primarily engaged in the business of selling or leasing goods or services if the cause of action arises out of a communication related to the person's sale or lease of the goods or services."). But UPEPA's definition of "goods or services" specifically excludes "the creation, dissemination, exhibition, or advertisement or similar promotion of a . . . journalistic . . . work." *Id.* § 2A:53A-50(a)(1).

24

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2025, I caused a copy of the within Defendant The New York Times Company's Motion to Dismiss and for Attorneys' Fees, Expenses, and Costs Pursuant to Federal Rule 12(b)(6) and New Jersey's Uniform Public Expression Protection Act and the accompanying Declaration of David L. Cook with Exhibits A through D to be served on the *pro se* Plaintiff by e-filing same with CM-ECF.

/s/ David L. Cook<br>DAVID L. COOK

Dated:        October 20, 2025