<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 25-16103 (EP) (MAH) |
| v. | **MEMORANDUM ORDER** |
| THE NEW YORK TIMES COMPANY, | |
| Defendant. | |

**PADIN, District Judge**

*Pro se* Plaintiff Harold Hoffman brings this action against Defendant the New York Times Company ("Defendant" or the "New York Times"). D.E. 1-1 ("Complaint" or "Compl."). Plaintiff's suit stems from an article published by the New York Times on July 25, 2025, titled "Young, Old, and Sick Starve to Death in Gaza: 'There Is Nothing'" along with the article's accompanying photo:



The New York Times

"All the News That's Fit to Print"

VOL. CLXXIV .... No. 60,591    FRIDAY, JULY 25, 2025    $4.00

**FRENETIC SEARCH OF EPSTEIN FILES, AND NOTHING NEW**

**ENORMOUS OPERATION**

**F.B.I. and Justice Dept. Scour for Anything to Quiet Trump Base**

**Trump Clashes With Fed Chair In a Rare Visit**

*Pressing Powell on Cost of Bank's Renovation*

**Young, Old and Sick Starve to Death in Gaza: 'There Is Nothing'**

Mohammed Zakaria al-Mutawaq, about 18 months, with his mother, Hedaya al-Mutawaq, who said he was born healthy but was recently diagnosed with severe malnutrition. A doctor said the number of children dying of malnutrition in Gaza had risen sharply.

D.E. 7-3.[1]

According to Plaintiff, the New York Times deliberately and misleadingly omitted the fact that the infant in the photo—an 18-month-old baby named Mohammed Zakaria al-Mutawaq

---

[1] Throughout this Memorandum Order, the Court refers to this article as the "Article" and this photo as the "Photo." The Article can be found in full at D.E. 7-3.

2

(pictured with his mother, Hedaya al-Mutawaq)—was born with cerebral palsy, hypoxemia, and serious genetic disorders in order to advance an untrue narrative about the impact of the war between Hamas and Israel on those living in Gaza. Plaintiff also claims that the New York Times's publication of the Article runs in contravention of its motto "All the News That's Fit to Print."

Plaintiff originally filed the Complaint in the Superior Court of New Jersey, Bergen County, Law Division. *See* D.E. 1 ("Notice of Removal"). He brings five claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2 *et seq.*, as well as one claim for common law fraud. *See* Compl. Defendant then removed the action to this Court. *See* Notice of Removal. Following removal, Defendant moves to dismiss the Complaint. D.E. 7-1 ("Motion" or "Mot.").[2] Defendant also seeks to recover attorney's fees pursuant to the New Jersey Uniform Public Expression Protection Act, N.J. Stat. Ann. § 2A:53A-50. *See id.* Plaintiff opposes the Motion. D.E. 10 ("Opposition" or "Opp'n"). Defendant replies. D.E. 14 ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons explained below, the Court will **GRANT** Defendant's Motion and **DISMISS** the Complaint.

---

[2] Defendant's notice of motion is filed at D.E. 7.

3

## I.    BACKGROUND

### A.    Factual Background[3]

On July 25, 2025, the New York Times published the Article and the Photo on the front page of its print edition and on its website.  Compl. ¶ 1; *see* the Article and Photo.  As indicated in the Photo's caption—and mentioned again in the Article—Hedaya stated that her son Mohammed was born healthy but had been recently diagnosed with severe malnutrition.  Compl. ¶¶ 1-2.  The Article reported that after twenty-one months of war between Hamas and Israel, "the lack of available food and water is taking a heavy toll on Gaza's most vulnerable civilians—the young, the old and the sick."  Article.  The Photo—which captures an emaciated infant cradled in his mother's arms—immediately "became a worldwide flashpoint for anti-Israel sentiment and allegations that it was inflicting starvation in Gaza," with news outlets around the world circulating the Photo.  Compl. ¶ 2.

On July 29, 2025, the New York Times published an updated version of the Article online, D.E. 7-4, Ex. B ("Updated Article"), which omitted the previously included statements from Hedaya and replaced them with a quotation from Mohammad's doctor, who stated that Mohammad "had pre-existing health problems affecting his brain and muscle development" and that "his health deteriorated rapidly in recent months as it became increasingly difficult to find food and medical care, and the medical clinic that treated him said he suffers from severe

---

[3] The facts in this section derive from the Complaint and the attachments thereto, and the Court draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Relatedly, the Court may rely on "document[s] integral to or explicitly relied upon in the complaint . . . without converting the motion to dismiss into one for summary judgment.'"  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  The Court may also consider excerpts from documents included in the complaint, but which themselves are not attached in full.  *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 37 n.1 (3d Cir. 2018) (citing *id.*).  Accordingly, the Court refers to the Article and the Photo when deciding Defendant's Motion, which were referenced in the Complaint and attached in full to Defendant's Motion.

malnutrition."  On July 30, 2025, the New York Times included the following editor's note regarding the Article in its print edition:

> An article on Friday about people in Gaza suffering from malnutrition and starvation after nearly two years of war with Israel lacked information about Mohammed Zakaria al-Mutawaq, a child suffering from severe malnutrition and whose photo was featured prominently in the article.  After publication of the article, The [New York] Times learned from his doctor that Mohammed also had preexisting health problems.  Had The Times known the information before publication, it would have been included in the article and the picture caption.

D.E. 7-5.  An identical editor's note was published on the New York Times's webpage.  *See* D.E. 7-6.

Contrary to the New York Times's representation that it learned of Mohammad's pre-existing health conditions *after* the Article was published, Plaintiff alleges that the New York Times knew all along that Mohammad "was suffering not from starvation caused and/or induced by Israel and/or its armed forces, but rather by a highly serious neurological disorder effecting the child since birth."  Compl. ¶ 6.  In fact, Plaintiff claims the New York Times deliberately omitted this information from the Article (and also omitted Mohammad's well-fed older brother from the Photo) in order "to suggest to its readers, its subscribers, and to the world, that Israel and its armed forces were on a mission to starve children in Gaza."  *Id.* ¶¶ 1, 6-7.  Plaintiff asserts that Defendant's deliberately false and misleading coverage violates the NJCFA.  *Id.* ¶ 3.

As a subscriber to the New York Times, Plaintiff pays "substantial sums . . . so that he may be provided, on a daily basis, with truthful and accurate news; not fraudulent propaganda."  *Id.* ¶ 8.  And through its motto "All the News That's Fit to Print,"[4] the New York Times expressly promises that its paid subscribers will receive news, "not politically motivated lies."  *Id.*

---

[4] Herein, the "Motto."

5

Plaintiff brings this suit to obtain "legal relief to remediate the injury that Defendant has inflicted on its New Jersey subscribers." *Id.* ¶ 10. He alleges that the New York Times's "conscious and deliberately false 'news' story deceived and cheated its New Jersey subscribers by providing fraudulent propaganda as opposed to truthful news." *Id.* ¶ 21. According to Plaintiff, this conduct "constitutes fraud in the inducement to purchase/continue a New York Times subscription by resort to wholly false, sensational and misrepresented material facts." *Id.* ¶ 23.

Plaintiff, since childhood, has known of the New York Times's advertising and marketing claims and promises with respect to the integrity of its news delivery. *Id.* ¶ 27.[5] Although the Complaint does not indicate when, at some time, "Plaintiff became a subscriber to the New York Times on a daily basis in reliance upon Defendant's advertising, marketing claims and promises." *Id.*

Plaintiff alleges that he and members of the putative class relied on the New York Times's "misrepresentations and would not have purchased and/or paid any purchase price for [the New York Times] but for Defendant's false claims and misrepresentations, as well as affirmative concealment of material facts. As a result, Defendant has wrongfully taken substantial sums from innocent consumers." *Id.* ¶ 38; *see id.* ¶¶ 40-41. Plaintiff specifically claims that he and members of the putative class "suffered ascertainable loss when they received, for their money, a product vastly different from the one promised by [the New York Times]." *Id.* ¶ 50. He alleges that the New York Times "failed to measure up to the consumers' reasonable expectations based on the

---

[5] As discussed in more depth *infra*, Plaintiff cites to paragraph 27 of the Complaint to support his argument that one of the promises the New York Times made with respect to the integrity of its news reporting—and that induced Plaintiff to subscribe to the New York Times—is its Handbook of Practices for Ethical Journalism. *See* Opp'n at 10. Because this document is not referenced within the Complaint, the Court does not reference it within this section of the Memorandum Order, which summarizes the allegations in the Complaint.

representations" it made. *Id.* Namely, that the New York Times will live up to its Motto to include all the news that's fit to print.

For this conduct, Plaintiff brings five counts under the NJCFA: (1) an unconscionable commercial practice (Count I); (2) deception (Count II); (3) fraud (Count III); (4) false pretense, false promise, and/or misrepresentation (Count IV); and (5) knowing concealment, suppression and/or omission of material facts with the intent that others rely upon such concealment, suppression and/or omission, in connection with the sale or advertisement of any merchandise (Count V). Plaintiff also brings a claim for common law fraud (Count VI).

In addition to the aforementioned damages, Plaintiff seeks injunctive relief requesting that the New York Times provide written notice to the New Jersey consumer public "ON THE FRONT PAGE OF ITS NEWSPAPER, LEAD COLUMN, that its July 25, 2025 claims that the Child depicted in the front page photo was being starved by Israel were false." *Id.* ¶ 55.

### B.      Procedural History

Plaintiff commenced this action in the Superior Court of New Jersey, Bergen County, Law Division, on August 27, 2025, and the Complaint was served on the New York Times on August 28, 2025. Notice of Removal at 1. Following removal, the New York Times moves to dismiss the Complaint. Mot. The Motion is fully briefed and ready for a decision.

## II.     LEGAL STANDARDS

### A.      Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Cnty. of Allegheny*, 515 F.3d at 233 (citation modified).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

    **B.       Federal Rule of Civil Procedure 9(b)**

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Rule 9(b) "has been interpreted to require that plaintiffs 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged' and 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (citation modified) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  Rule 9(b) applies to common law fraud claims and claims under the NJCFA.  *Clark v. Wyndham Hotels & Resorts*, No. 24-10836, 2025 WL 211538, at *2 (D.N.J. Jan. 16, 2025) (citing *Frederico*, 507 F.3d at 200).

**III.    DISCUSSION**

    Plaintiff brings five claims under the NJCFA as well as one claim for common law fraud. The NJCFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2. To state a claim under the NJCFA, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *McCalley v. Samsung Elecs. Am., Inc.*, No. 07-2141, 2008 WL 878402, at *7 (D.N.J. 2008). The NJCFA recognizes three types of unlawful acts: (1) affirmative misrepresentations; (2) knowing omissions; and (3) regulation violations. *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 373 (D.N.J. 2015).

Fraud at common law requires: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Marchi v. Hudson City Sav. Bank*, No. 15-5725, 2017 WL 628476, at *4 (D.N.J. Feb. 15, 2017) (citing *Gennari v. Weichert*, 148 N.J. 582, 610 (1997)).

Here, Plaintiff appears to bring claims based on two affirmative misrepresentations—(1) publishing the Article and Photo knowing they were false/misleading and (2) the New York Times's Motto—as well as two knowing omissions related to the Article—(1) failing to include Mohammad's full health history in the Article and (2) removing his allegedly healthier older brother from the Photo.

The New York Times argues that the Court should dismiss the Complaint because Plaintiff's suit is barred by the First Amendment and also because Plaintiff fails to plead viable

9

fraud claims (either under the NJCFA or common law fraud). According to Plaintiff, the New York Times is wrong on both fronts.

After considering the parties' positions, the Court agrees with the New York Times that Plaintiff has failed to state a claim on any count, and therefore, will **GRANT** its Motion on those grounds.

### A.    Plaintiff Fails to State a NJCFA Claim (Counts I-V)

Under the NJCFA, "[a]ffirmative acts must be 'misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Harnish v. Widener Univ. Sch. of L.*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013) (quoting *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (App. Div. 2003)). "To establish an act of omission under the NJCFA, 'plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" *Id.* at 652 (quoting *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 425 (App. Div. 2003)).

As previewed above, the acts underlying Plaintiff's claims can be grouped into two categories: (1) fraudulent conduct arising from the publication of the Article and Photo; and (2) fraudulent conduct in connection with the New York Times's Motto. The Court addresses them in turn.

#### 1.    Plaintiff's NJCFA claims based on the Article and Photo

At the outset, the Court notes that "to state a claim within the scope of the [NJCFA], a plaintiff must allege facts that establish that the alleged fraudulent conduct induced or lured the plaintiff into purchasing merchandise or real estate." *Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 724 (D.N.J. 2008); *see Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, No. 20-4501, 2021 WL 268155, at *2 (D.N.J. Jan. 27, 2021) ("The NJCFA only covers unlawful

conduct 'in connection with the sale or advertisement of any merchandise or real estate.'" (quoting N.J. Stat. Ann. § 56:8-2)).

For example, in *Joe Hand Promotions*, the plaintiff's (a business) NJCFA claim was dismissed because it could not show that the allegedly fraudulent conduct was what induced plaintiff to purchase the merchandise at issue. *Joe Hand Promotions*, 567 F. Supp. 2d at 724. In reaching that decision, the Court focused on the temporal relationship between the challenged conduct and the plaintiff's purchase, and highlighted the fact that the allegedly fraudulent conduct (a letter threatening to sue plaintiff) was sent *after* the plaintiff had already purchased the merchandise; therefore, the plaintiff could not show either that the fraudulent conduct was what induced it to purchase the merchandise or that the conduct was made "in connection with" the sale or advertisement of merchandise. *Id.* at 724-25; *accord Gennari*, 148 N.J. at 607 ("Not just any erroneous statement will constitute a misrepresentation prohibited by [the NJCFA]. The misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." (citation modified)).

The same temporal reasoning applies to Plaintiff's NJCFA claims that arise from the Article and the Photo, which were published long after Plaintiff subscribed to the New York Times. Indeed, Plaintiff concedes that the Article and Photo are not what induced him to purchase a subscription to the New York Times. Opp'n at 3 ("Of course the fabricated July 25 photo and news story did not induce me to purchase a subscription. I was a subscriber to the New York Times prior to July 25, 2025."). As such, Plaintiff cannot show that the Article or Photo were made *in connection with* the sale or advertisement of merchandise or that any omission from either is what caused his loss. It necessarily follows that Plaintiff cannot state a NJCFA claim for any conduct arising from the publication of the Article or Photo. *See Gennari*, 148 N.J. at 607 (noting that the

11

misrepresentation has to be material to the transaction).   As such, these claims will be

**DISMISSED** *with prejudice*.[6]

### 2.    *Plaintiff's NJCFA claim based on the New York Times's Motto*

While the New York Times makes several arguments why Plaintiff cannot state a claim

under the NJCFA based on its Motto, the Court need only address one:  the Motto is not an

affirmative misrepresentation actionable under the NJCFA.  Mot. at 16.

> "To constitute an affirmative misrepresentation under the NJCFA, the statement
> must be:  (1) material to the transaction; (2) a statement of fact; (3) found to be
> false; [and (4)] calculated to induce the buyer to make the purchase." [*Gennari*,
> 148 N.J. at 607]; *Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at \*5 (D.N.J.
> Mar. 26, 2012).  "A statement of fact is material if: (a) a reasonable person would
> attach importance to its existence in determining a choice of action . . .; or (b) the
> maker of the representation knows or has reason to know that its recipient regards
> or is likely to regard the matter as important in determining his choice of action,
> although a reasonable man would not so regard it." [*Hammer*, 2012 WL 1018842,
> at \*5]. . . . Furthermore, while the plaintiff need not prove reliance, for [NJCFA]
> claims based on affirmative representation there must be "a direct causal connection
> between the misrepresentation and the plaintiff's defeated expectations about the
> product." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 100 (D.N.J. 2011);
> *Peruto v. TimberTech Ltd.*, No. 15-2166, 2015 WL 8664276, at \*4 (D.N.J. Dec. 10,
> 2015).

*Rosenthal v. Sharkninja Operating LLC*, No. 16-1048, 2016 WL 7338535, at \*3 (D.N.J. Dec. 19,

2016).

The NJCFA further "distinguishes between actionable misrepresentations of fact and

'puffery.'" *In re Toshiba America HD DVD Mktg. & Sales Pracs. Litig.*, No. 08-939, 2009 WL

2940081, at \*9 (D.N.J. Sept. 11, 2009) (citing *Rodio v. Smith*, 123 N.J. 345, 352 (1991)).

---

[6] "Courts shall dismiss a complaint for failure to state a claim when 'no relief could be granted
under any set of facts which could be proved consistent with the allegations.'" *Bornstein v.
McMaster-Carr Supply Co.*, No. 23-2849, 2025 WL 602745, at \*2 (D.N.J. Feb. 24, 2025) (quoting
*Celgene Corp. v. Teva Pharms, USA, Inc.*, 412 F. Supp. 2d 439, 443 (D.N.J. 2006)).  Because
Plaintiff concedes that the Article and Photo are not what induced him to purchase a New York
Times subscription, he cannot show under any set of facts that they were unlawful conduct made
in connection with the sale or advertisement of merchandise.

"Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery. The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Id.* at \*10 (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)). In *Rodio*, for instance, the New Jersey Supreme Court held that Allstate's slogan, "You're in good hands with Allstate," was "nothing more than puffery" and was therefore not "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the [NJCFA]." 123 N.J. at 351-52.

The Court agrees with the New York Times that its Motto is not a false statement of fact. For one, the Court finds that the Motto is a highly vague and subjective statement that assures consumers nothing in particular. As the New York Times persuasively argues, "[w]hat is 'fit' and what is not 'fit' is by its very nature not a fact, but a subjective determination made by editors," Mot. at 17, and Plaintiff himself recognizes the New York Times "is entitled to editorial freedom to choose what news to emphasize," *id.* (quoting Compl. ¶ 17). As such, the New York Times has the discretion to choose what news is fit to print. That Plaintiff does not like that news—or believes that the New York Times's reporting is not news but politically motivated lies—does not change the fact that the New York Times's Motto is a highly subjective statement that affords it significant discretion choose what it deems fit to print.

In addition, it is hard to even consider the Motto as reaching any level of puffery. It makes no specific claim of superiority (either a general claim of superiority or a claim of superiority by reference to any metric), nor does it assure consumers anything "specific and measurable." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993). By way of another example, in *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, the Court found that a product label that indicated the product was "clinically proven" to help babies sleep better went beyond mere puffery such that it

13

was actionable under the NJCFA because a consumer could rely on that statement when deciding to purchase the product. 865 F. Supp. 2d 529, 540 (D.N.J. 2011). By contrast, courts in this District routinely reject NJCFA claims premised on subjective advertisements like the New York Times's Motto. *See, e.g.*, *In re Toshiba Am.*, 2009 WL 2940081, at *10 (holding that a statement that a product was for "Today, Tomorrow and Beyond" to be non-actionable puffery); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578 (D.N.J. 2016) (finding that a manufacturer's statements claiming its products were "top-quality" and "dependable" could not support a misrepresentation claim); *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 451-52, 458 (D.N.J. 2015) (finding statements that a decking product was "designed to provide years of low-maintenance use and enjoyment," "dependable and attractive for years," and "[provided] years of outdoor living pleasure" constituted non-actionable puffery). The New York Times's Motto is even more vague than these statements, and in the Court's view, is one that no reasonable person would attach importance to when considering whether to purchase a New York Times subscription. *See Hammer*, 2012 WL 1018842, at *5. If the Motto does not even rise to the level of puffery, it cannot be an affirmative representation either.

In any event, Plaintiff failed to respond to the New York Times's arguments regarding the Motto in his Opposition. Plaintiff's failure to respond, "despite [being given] an opportunity to do so[,] constitutes a waiver or abandonment as to those arguments." *Samra Plastic & Reconstructive Surgery v. United Healthcare Ins. Co.*, 768 F. Supp. 3d 661, 670 n.6 (D.N.J. 2025); *EBIN N.Y., Inc. v. KISS Nail Prods., Inc.*, No. 23-2369, 2024 WL 1328029, at *7 (D.N.J. Mar. 28, 2024) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." (quoting *Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011))).

Having found that Plaintiff has failed to show that the Motto is an affirmative representation actionable under the NJCFA, the Court will **DISMISS** *without prejudice* Plaintiff's claims based on the Motto.[7]

> 3.      *Plaintiff's NJCFA claim based on the New York Times's Handbook of Practices for Ethical Journalism (the "Handbook")*

In his Opposition, Plaintiff changes course and asserts for the first time that what induced him to purchase a New York Times subscription was neither the Article, the Photo, nor the Motto, but rather, the New York Times's "written promise to deliver accurate news coverage in exchange for his subscription funds." Opp'n at 3. The written promise Plaintiff is referring to is a statement within Chapter Two of the Handbook: "accuracy is the foundation of our credibility." *Id.* at 4. "In reliance on this promise of accurate news reporting," which Plaintiff notes "is viewable on-line for

---

[7] Although the Court dismissed Plaintiff's NJCFA claims based on the Motto for Plaintiff's failure to show the Motto is an affirmative misrepresentation, the Court notes that Plaintiff also fails to plead with particularity ascertainable loss or a causal relationship between the Motto and his ascertainable loss (to the extent there is any).

A plaintiff must plead ascertainable loss "with enough specificity as to give the defendant notice of possible damages." *Lieberson*, 865 F. Supp. 2d at 541. For loss to be "ascertainable," the consumer must "quantify the difference in value between the promised product and the actual product received." *Smajlaj*, 782 F. Supp. 2d at 99. As Plaintiff is aware, "broad and conclusory allegations do not provide the specificity that is required in pleading ascertainable loss." *Hoffman v. Nordic Nats., Inc.*, No. 12-5870, 2014 WL 1515602, at *5 (D.N.J. Apr. 17, 2014). The amount of loss cannot be "hypothetical or illusory." *Id.* (citation omitted).

Plaintiff does not come close to meeting Rule 9(b)'s pleading standard with respect to ascertainable loss as he does not allege in the Complaint critical information, such as the date he first subscribed to the New York Times, how much he paid for his subscription, and how much loss he has suffered. Absent this specific information, "Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss." *Lieberson*, 865 F. Supp. 2d at 541-42.

Additionally, Plaintiff's failure to allege facts as to when he purchased his subscription and when he encountered the Motto is also fatal to his ability to sufficiently plead causation. *See Nordic Nats.*, 2014 WL 1515602, at *5 (explaining that a plaintiff must "plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained." (citation omitted)).

15

all subscribers to see and to rely upon," Plaintiff "purchased and maintained the subscription." *Id.* at 3-4 (citing Compl. ¶ 27).

As the New York Times notes in Reply, Plaintiff's first explicit reference to the Handbook comes in his Opposition. The Supreme Court has made it clear that when deciding a motion to dismiss, the Court "considers only the allegations contained within the four corners of [the] complaint." *Iqbal*, 556 U.S. at 674. Therefore, "the Court may not consider Plaintiff's arguments in [his] opposition which attempt to add more specificity to the Complaint's" allegations because "a complaint cannot be amended (or supplemented) by way of an opposition brief." *Anthony v. Choudary*, No. 19-17074, 2020 WL 7054271, at *3 (D.N.J. Dec. 2, 2020) (quoting *Swift v. Pandey*, No. 13-649, 2013 WL 6022093, at *2 (D.N.J. Nov. 13, 2013)). For this reason, the Court rejects Plaintiff's citation to paragraph 27 of the Complaint as a way to tie the Handbook into the Complaint, as that paragraph states in general and conclusory terms that Plaintiff "since childhood, has been exposed to Defendant's advertising and marketing claims and promises with respect to the integrity of its news delivery. As a result, Plaintiff became a subscriber to the New York Times on a daily basis in reliance upon Defendant's advertising, marketing claims and promises." In short, Plaintiff's theory can be denied on those grounds alone.

But, even if Plaintiff referenced the Handbook in the Complaint, he would still fail to state a claim under the NJCFA. As noted above, to be actionable under the NJCFA, an affirmative misrepresentation must be made "in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2. Thus, putting aside that Plaintiff does not plead with particularity when he first saw the Handbook or when he first subscribed to the New York Times, Plaintiff fails to show that this statement within the Handbook was made in connection with the sale or advertisement of merchandise. All Plaintiff offers is that the statement "is viewable on-

16

line for all subscribers to see and to rely upon," which is meaningfully different from showing that the statement was made *in connection with* the sale or advertisement of merchandise. Therefore, any NJCFA claim based on the Handbook fails on these grounds as well.

In sum, having identified numerous defects with Plaintiff's NJCFA claims, the Court will **DISMISS** Counts I-V from the Complaint.

**B.    Plaintiff Fails to State a Common Law Fraud Claim (Count VI)**

"[T]he elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge of falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at *17 (D.N.J. Dec. 29, 2011) (citations omitted). "Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 174 (2005).

Put simply, the same deficiencies that doom Plaintiff's NJCFA claims also doom his common law fraud claims.

For any fraud claim based on the Article and Photo, Plaintiff cannot show that either proximately caused his loss, as both post-date his subscription to the New York Times. *See Lord Abbett Mun. Income Fund, Inc. v. Citigroup Glob. Markets, Inc.*, No. 11-5550, 2012 WL 13034154, at *7 (D.N.J. July 12, 2012) ("To adequately plead causation for a common law fraud claim, a plaintiff must allege that the defendant's misrepresentations proximately caused its loss." (citing *McCabe v. Ernst & Young, LLP*, No. 01-5747, 2006 WL 42371, at *12-13 (D.N.J. Jan. 6, 2006))); *see also supra* Section III.A.1 (explaining that Plaintiff cannot show under any set of facts that either induced him to purchase his subscription). As such, Plaintiff's fraud claims based on the Article and Photo will also be **DISMISSED** *with prejudice*.

17

With respect to the Motto, as explained above, Plaintiff has failed to show that the Motto is a misrepresentation of fact actionable for fraud. *See, e.g.*, *LS-NJ Port Imperial LLC v. A.O. Smith Water Prods. Co.*, No. 22-1687, 2022 WL 17547269, at *7-8 (D.N.J. Dec. 8, 2022) (dismissing common law fraud claim for failure to show a material representation having previously determined that the same statement was not an affirmative misrepresentation under the NJCFA). Plaintiff has also failed to plead with the requisite particularity when he saw the Motto, when he subscribed to the New York Times, that he relied on the Motto when purchasing his subscription, and how he relied on the Motto. *See supra* Section III.A.2. Without these details, Plaintiff has not pled enough facts to survive a motion to dismiss. *In re Rockefeller*, 311 F.3d at 216 (explaining that although Rule 9(b) does not require a plaintiff to show *every* material detail of the fraud, the plaintiff must use some alternative means of injecting precision and some measure of substantiation into their allegations).

Finally, Plaintiff's fraud claims rooted in the Handbook also fail. Assuming that the assertions made in his Opposition were in the Complaint, Plaintiff has not sufficiently indicated that the Handbook was material to his decision to subscribe to the New York Times. *See Lord Abbett Mun. Income Fund*, 2012 WL 13034154, at *4 ("Material information is 'information that would be important to a reasonable investor in making his or her investment decisions.'" (quoting *In re Lucent Tech., Inc. Secs. Litig.*, 217 F. Supp. 2d 529, 543 (D.N.J. 2002))). Nor has Plaintiff provided when this statement was made or when he saw it. Plaintiff has also failed to satisfy Rule 9(b)'s heightened pleading requirement to show he actually relied on this statement in the Handbook when deciding to subscribe to the New York Times. *See Brown ex rel. Est. of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 519 (D.N.J. 2002) (dismissing common law fraud claim where the plaintiff provided insufficient proof of reliance). While the Court recognizes "there is

18

some leeway in Rule 9(b)'s particularity requirement, this leeway does not allow unsubstantiated claims to sustain a fraud claim." *Alston v. TD Bank, N.A.*, No. 24-6721, 2026 WL 1180028, at *8 (D.N.J. Apr. 30, 2026).  Here, Plaintiff has offered no facts regarding his reliance on the statement in the Handbook—or, for that matter, for the Motto as well—other than conclusory (and spurious) allegations.  Therefore, he fails to state a claim.  *See, e.g.*, *Hoffman v. Cogent Sols. Grp., LLC*, No. 13-79, 2013 WL 6623890, at *4 (D.N.J. Dec. 16, 2013) (dismissing plaintiff's common law fraud claim because he failed to identify with specificity the nature of the misrepresentations, when they were made, which representations he relied on, and how he relied on them).

## IV.    CONCLUSION

For the reasons stated above,

**IT IS**, on this **4th** day of June, 2026,

**ORDERED** that Defendant's Motion, D.E. 7, is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint, D.E. 1-1, is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's fraud-based claims arising from the Article and Photo are **DISMISSED** *with prejudice*; and it is further

**ORDERED** that Plaintiff's other claims are **DISMISSED** *without prejudice*;[8] and it is finally

**ORDERED** that Plaintiff may file an amended complaint within **30 days** of this Memorandum Order that cures the deficiencies identified *supra*.

Evelyn Padin, U.S.D.J.

---

[8] While the Court provides Plaintiff leave to amend the Complaint, *see Cnty. of Allegheny*, 515 F.3d at 236, the Court cautions Plaintiff that "any amendment must have a good faith basis on which [p]laintiff can proceed," *Uygur v. Gensler*, No. 24-975, 2024 WL 3497888, at *4 (E.D. Pa. July 19, 2024).